753 A.2d 217

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Abraham Martinez COTTO, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1999.

Decided June 20, 2000.

James J. Karl, Chief Public Defender, Office of the Public Defender, Mark Scott Sedley, Asst. Defender, Defender's Association of Phila., for Abraham Martinez Cotto.

34

Joseph C. Madenspacher, Dist. Atty., Hugh J. Burns, Jr., Special Prosecutor, Phila. Cty., Susan E. Moyer, Asst. Dist. Atty., Bruce A. Roth, Asst. Dist. Atty., Office of the Dist. Atty., for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CASTILLE, Justice.

This Court granted allocatur in this matter to determine whether certain 1995 amendments to the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, violate the Fourteenth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution. For the reasons that follow, we hold that the amendments are constitutional and, therefore, we affirm.

On April 23, 1996, appellant and two accomplices, armed with a handgun, robbed the owner, an employee and two customers of the Mane Magic Beauty Salon in Lancaster, Pennsylvania. Subsequently, on May 8, 1996, appellant and three accomplices, again armed with a handgun, robbed the Parkhill Jewelry Store, its employees and one customer. On July 29, 1996, appellant was charged with four counts of robbery and one count of criminal conspiracy arising out of the April 23 incident and with two counts of robbery and one count of criminal conspiracy arising out of the May 8 incident.

Appellant, who was fifteen years old at the time of both robberies, was charged in criminal court as an adult pursuant to § 6302 of the Juvenile Act, which excludes robbery from the definition of a delinquent act when, as in the case *sub judice*, (1) it was committed by a child who was fifteen years old or older and (2) a deadly weapon was used during the commission of the offense.[1] On February 28, 1997, appellant

1. Those offenses that the amended Juvenile Act requires to be initiated in criminal court when committed by juveniles are known as "direct file" cases.

filed a motion to transfer the proceedings to juvenile court and a petition for a writ of *habeas corpus* alleging that the 1995 amendments to the Juvenile Act governing transfer were unconstitutional on two grounds: because they were void for vagueness and because they unconstitutionally placed the burden of proof on the juvenile seeking transfer to juvenile court.

The trial court promptly scheduled a hearing, which was held on March 20, 1997. After receiving briefs from the parties, the trial court issued an opinion on May 12, 1997, denying both motions. In the opinion, the trial court engaged in an exhaustive analysis of the statutory factors governing the decision to transfer a case to juvenile court. *See* 42 Pa.C.S. § 6355(a)(4)(iii).

One week later, on May 19, 1997, appellant entered a negotiated guilty plea to all charges and was sentenced to eight concurrent terms of five to ten years' imprisonment. Pursuant to the plea agreement, appellant specifically reserved the right to appeal his twin challenges to the constitutionality of the amendments to the Juvenile Act. On appeal, appellant did not challenge the trial court's discretionary denial of his transfer motion, but raised only his two challenges to the constitutionality of the amendments. The Superior Court held that the amendments were constitutional. *Commonwealth v. Cotto*, 708 A.2d 806 (Pa.Super.1998).

■ In his appeal to this Court, as in the Superior Court, appellant contends that the 1995 amendments to the Juvenile Act are unconstitutional in two respects. Initially, we note that a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Commonwealth v. Hendrickson*, 555 Pa. 277, 280–81, 724 A.2d 315, 317 (1999); *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). Therefore, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *Barud, supra.*

As amended in 1995, the Juvenile Act vests original jurisdiction in the criminal courts for specified violent felonies, e.g., rape, aggravated assault and robbery committed by minors

aged fifteen or older who either used a deadly weapon in the commission of the offense or were previously adjudicated delinquent for such crimes.[2]  Prior to the amendments, those

**2.**  42 Pa.C.S. § 6302 defines "Delinquent Act" as follows:
"Delinquent act."
(1) The term means an act designated a crime under the law of this Commonwealth, or of another state if the act occurred in that state, or under Federal law, or under local ordinances or an act which constitutes indirect criminal contempt under 23 Pa.C.S. Ch. 61 (relating to protection from abuse).
(2) The term shall not include:
(i) The crime of murder.
(ii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct and a deadly weapon as defined in 18 Pa.C.S. § 2301 (relating to definitions) was used during the commission of the offense, which, if committed by an adult, would be classified as:
(A) Rape as defined in 18 Pa.C.S. § 3121 (relating to rape).
(B) Involuntary deviate sexual intercourse as defined in 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).
(C) Aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault).
(D) Robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery).
(E) Robbery of motor vehicle as defined in 18 Pa.C.S. § 3702 (relating to robbery of motor vehicle).
(F) Aggravated indecent assault as defined in 18 Pa.C.S. § 3125 (relating to aggravated indecent assault).
(G) Kidnapping as defined in 18 Pa.C.S. § 2901 (relating to kidnapping).
(H) Voluntary manslaughter.
(I) An attempt, conspiracy or solicitation to commit murder or any of these crimes, as provided in 18 Pa.C.S. §§ 901 (relating to criminal attempt), 902 (relating to criminal solicitation) and 903 (relating to criminal conspiracy).
(iii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct and has been previously adjudicated delinquent of any of the following prohibited conduct which, if committed by an adult, would be classified as:
(A) Rape as defined in 18 Pa.C.S. § 3121.
(B) Involuntary deviate sexual intercourse as defined in 18 Pa.C.S. § 3123.
(C) Robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii).
(D) Robbery of motor vehicle as defined in 18 Pa.C.S. § 3702.
(E) Aggravated indecent assault as defined in 18 Pa.C.S. § 3125.
(F) Kidnapping as defined in 18 Pa.C.S. § 2901.
(G) Voluntary manslaughter.
(H) An attempt, conspiracy or solicitation to commit murder or any of these crimes as provided in 18 Pa.C.S. §§ 901, 902 and 903.

serious felonies initially came within the jurisdiction of the juvenile courts, subject to certification and transfer to adult court. The 1995 amendments reflect a legislative judgment that the most serious violent felonies should be treated in the same manner as murder charges, i.e., as adult crimes in adult court, at least in the first instance.

The amendments, however, also provide a mechanism for a minor to prove to the court that he does not belong in criminal court. Thus, § 6322 of the Juvenile Act allows a defendant to petition to have his case transferred to juvenile court. The standard governing such transfers is as follows:

> ... In determining whether to transfer a case charging murder or any of the offenses excluded from the definition of "delinquent act" in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest. In determining whether the child has so established that the transfer will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings).

42 Pa.C.S. § 6322(a).

First, appellant contends that this section is unconstitutionally vague because the "serve the public interest" standard is not defined. A statute is constitutionally void only if it is so vague that "persons of 'common intelligence must necessarily guess at its meaning and differ as to its application.'" *Fabio v. Civil Service Commission of the City of Philadelphia*, 489 Pa. 309, 314, 414 A.2d 82, 84 (1980), *quoting Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applica-

---

(iv) Summary offenses, unless the child fails to comply with a lawful sentence imposed thereunder, in which event notice of such fact shall be certified to the court.

(v) A crime committed by a child who has been found guilty in a criminal proceeding for other than a summary offense.

38

tion." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application. *Hendrickson, supra; Barud, supra.*

In support of his vagueness argument, appellant cites several cases in which this and other courts have held that statutes that provide for determinations to be made based upon the "public interest" standard have been found to be void for vagueness. *See Bell Telephone Co. of Pa. v. Driscoll*, 343 Pa. 109, 21 A.2d 912 (1941); *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242 (M.D.Pa.1975), *aff'd per curiam*, 535 F.2d 1245 (3d Cir.1976), *cert. denied*, 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976); *People v. Saad*, 105 Cal.App.2d Supp. 851, 234 P.2d 785 (1951); *Whitaker v. Dept. of Ins. and Treasurer*, 680 So.2d 528 (Fla.Dist.Ct.App.1996). What appellant fails to recognize, however, is that in each of those cases the determination that the statute was unconstitutionally vague was based on the fact that the term "public interest" was not further defined in the statute. *E.g., Bell Telephone, supra* at 116, 21 A.2d at 915 (implied standard of public interest not proper unless further defined or limited in its meaning).

The amended Juvenile Act decidedly does not suffer from this infirmity. The amendments further define "public interest" by mandating that the court consider the factors set forth in § 6355, which provides, in pertinent part:

In determining whether the public interest can be served, the court shall consider the following factors:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors . . .

42 Pa.C.S. § 6355(a)(4)(iii). This extensive list of factors–specifically focusing on the background of the juvenile, the impact of his crime, the safety of the community and the juvenile's treatment and rehabilitation prospects–clearly provides definite standards for a court to apply in determining whether the public interest would be served by transfer of the matter to juvenile court.

Moreover, the purpose of the amended Act itself provides guidance as to the meaning of "public interest." The Statement of Purpose provides, in pertinent part:

Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S. § 6301(b)(2). When read in the context of the clearly elaborated legislative purpose, and given the extensive list of factors to be considered in determining whether to transfer a case to juvenile court, the term "public interest" is not vague at all. To the contrary, courts are provided with a carefully crafted framework for evaluating these often-difficult issues. Therefore, we find that the statute as amended is not unconstitutionally vague.

Appellant also claims that the Juvenile Act as amended is unconstitutional because the factors set forth may be mutually exclusive–i.e., the rehabilitative needs of the defendant and the safety of the community may weigh in favor of different conclusions – and the Juvenile Act does not provide any guidance as to the weight to be given individual factors. Appellant argues that such a construct invites arbitrary and discriminatory application. However, both this Court and the United States Supreme Court have held that a legislative decision not to assign specific weight to a series of various relevant factors does not render a statutory scheme unconstitutional. This Court addressed a similar challenge in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In *Zettlemoyer*, the appellant argued that Pennsylvania's death penalty statute was unconstitutionally vague because the jury was not given guidance as to the specific weight to be given to the competing aggravating and mitigating factors that a jury is required to consider in the penalty phase. In rejecting that claim, the Court, quoting federal precedent, stated:

> While these questions and decisions may be hard, they require no more line drawing than is commonly required of a factfinder in a lawsuit. For example, juries have traditionally evaluated the validity of defenses such as insanity or reduced capacity, both of which involve the same considerations as some of the above-mentioned mitigating circumstances. While the various factors to be considered by the sentencing authorities do not have numerical weights as-

signed to them, the requirements of *Furman [v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972),] are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.

The directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable the various aggravating circumstances to be weighed against the mitigating ones. As a result, the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed.

*Id.* at 66–67, 454 A.2d at 963–64, *quoting Proffitt v. Florida,* 428 U.S. 242, 257–58, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Under the Juvenile Act, the decision-maker has discretion in determining whether to transfer a direct file case to juvenile court. However, that discretion, like the discretion provided to juries under the death penalty statute, is guided by the specific factors that must be considered in making that determination. That the relevant factors may weigh in favor of different results is neither surprising nor problematic; rather, it reflects reality. Although each juvenile is an individual, he is also a member of a community. The needs of an individual are often at odds with the needs of society. The exercise of discretion routinely requires a balancing of competing concerns. Furthermore, nothing in the Juvenile Act countenances or encourages arbitrariness in the balancing process. In contrast, the interpretation that appellant suggests is constitutionally required would essentially eliminate discretion entirely. But the constitution does not disfavor discretion. Therefore, the transfer provisions of the Juvenile Act are not unconstitutional merely because they provide for flexibility and discretion rather than for the rigid assignment of a

specific weight to each of the factors to be considered in determining whether transfer is in the public interest.[3]

Second, appellant contends that the amended Act is unconstitutional because it impermissibly places the burden of proof for transfer on the accused. At the outset, we should emphasize that, as this Court noted in *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987), the special treatment provided to criminal offenders by the Juvenile Act is not a constitutional requirement. It is a statutory creation. That does not mean, of course, that the due process clause plays no role in questions of transfer. As we recognized in a matter construing a former version of the Juvenile Act, in a proceeding to determine whether to transfer a juvenile, "the youth is entitled to notice of the charges against him, to a counseled hearing where he may present evidence and cross-examine witnesses, access to social records and probation or similar reports, and a statement of the reasons for the Court's determination." *Commonwealth v. Pyle*, 462 Pa. 613, 621 n. 10, 342 A.2d 101, 105 n. 10 (1975), *citing Kent v. United States*, 383 U.S. 541, 557, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

With respect to the specific question of the constitutional propriety of placing the burden on a juvenile defendant to prove that he is amenable to treatment in juvenile court, we do not write upon a blank slate. To the contrary, the burden

---

3. We note that other jurisdictions faced with similar challenges have also held that juvenile transfer provisions based on the public interest are not unconstitutionally vague, even where the statute does not set forth factors to be considered at transfer hearings. *See, e.g., People v. Moseley*, 193 Colo. 256, 259–60, 566 P.2d 331 (1977) (six statutory factors with no weight assigned to the factors); *State v. Stanley*, 60 Haw. 527, 592 P.2d 422, 426–27 (1979), *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979) (no factors); *People v. Taylor*, 76 Ill.2d 289, 29 Ill.Dec. 103, 391 N.E.2d 366, 373–74 (1979) (six statutory factors with no weight assigned to the factors); *State v. Speck*, 242 N.W.2d 287, 289–94 (Iowa 1976) (no factors); *State ex rel. Londerholm v. Owens*, 197 Kan. 212, 416 P.2d 259, 271 (1966) (no factors); *In re a Juvenile*, 364 Mass. 531, 306 N.E.2d 822, 826–27 (1974) (no factors); *Lewis v. State*, 86 Nev. 889, 478 P.2d 168, 171 (1970) (no factors); *State v. Doyal*, 59 N.M. 454, 286 P.2d 306, 310–11 (1955) (no factors); *In the Interest of L.V.A.*, 248 N.W.2d 864, 866 (S.D.1976) (no factors); *State in Interest of Salas*, 520 P.2d 874, 875 (Utah 1974) (no factors); and *State v. F.R.W.*, 61 Wis.2d 193, 212 N.W.2d 130 (1973) (no factors).

of showing amenability to treatment justifying transfer to juvenile court was first placed on Pennsylvania juveniles not by the legislature, but by this Court in *Pyle*. In determining that it does not violate the Constitution to place the burden of proof for transfer of a murder case to juvenile court on the juvenile, the *Pyle* Court reasoned that:

The decision to transfer has no bearing on either the procedural or substantive aspects of the criminal conviction in criminal court (I.e., it is still the Commonwealth's burden to prove every fact necessary to constitute murder beyond a reasonable doubt). Consequently, placing the burden on a petitioner in this manner in no way denied him his due process safeguards.

*Id.* at 623 n. 12, 342 A.2d at 107 n. 12 (citations omitted). We have reaffirmed this holding in later cases. *Commonwealth v. Johnson,* 542 Pa. 568, 579, 669 A.2d 315, 321 (1995); *Williams, supra* at 71–74, 522 A.2d at 1063–64; *Commonwealth v. Pettus,* 492 Pa. 558, 561, 424 A.2d 1332, 1335–36 (1981); *Commonwealth v. Sourbeer,* 492 Pa. 17, 25, 422 A.2d 116, 119 (1980); *Commonwealth v. Greiner,* 479 Pa. 364, 369–71, 388 A.2d 698, 701–02 (1978). Furthermore, this Court has held that the rationale of *Pyle* is applicable to charges other than murder where those charges arise out of the same criminal transaction as a murder charge. *Commonwealth v. Romeri,* 504 Pa. 124, 137–39, 470 A.2d 498, 505 (1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984); *Commonwealth v. Keefer,* 470 Pa. 142, 147–48, 367 A.2d 1082, 1084–85 (1976). The rationale of these cases is equally applicable here. The only distinction is that the legislature has determined in its judgment that, in certain instances, violent felonies in addition to murder are sufficiently serious to merit vesting original jurisdiction in the criminal courts, while affording the defendant an opportunity to show that his is the exceptional case warranting juvenile treatment.

Appellant contends, however, that *Pyle* and its progeny must be limited to the murder cases at issue therein. Obviously, those cases spoke only of murder prosecutions because, under the previous version of the Juvenile Act, those were the

only cases directly filed in criminal court. But there is nothing unconstitutional in the legislature determining, in light of continued experience with violent juvenile crime, that other serious conduct also warrants criminal court treatment. In *Williams, supra,* this Court, in addressing the propriety of the legislature's determination that a juvenile charged with murder should be prosecuted as an adult, noted that "[m]urder is a heinous and serious crime, and the legislature's assumption that one who commits murder is in need of adult discipline and restraint is a reasonable one." *Williams, supra* at 71, 522 A.2d at 1063. That rationale is equally applicable to the violent offenses that were excluded from the definition of a delinquent act under the most recent amendments to the Juvenile Act. Armed robbery, too, for example, is a heinous and serious crime, and the legislature's informed determination that juveniles fifteen years of age and older who commit such offenses are not initially amenable to rehabilitation under the Juvenile Act, unless they prove otherwise by a preponderance of the evidence, is equally reasonable. There is nothing in the Constitution to prevent the legislature from making such a judgment.

Although it is true, as appellant notes, that murder has always been excluded from the jurisdiction of the juvenile courts, it is also true that, prior to the twentieth century, there were no juvenile courts in this Commonwealth at all.[4] The fact that the legislature chose in the past to presumptively extend the benefits of the juvenile system to older juveniles charged with armed robbery and other serious violent offenses does not act as a *constitutional* restraint upon it to make a different judgment in response to changing societal conditions. It is no less the legislature's prerogative now to limit those benefits than it was to extend them in the first place. Therefore, appellant's claim that it was unconstitutional to place the burden of proof upon him to prove that it would serve the

4. Juvenile courts were first established in this Commonwealth by the Act of May 21, 1901, P.L. 279.

public interest if he were transferred to juvenile court must fail.[5,6]

5. The parties requested, and were granted, leave to file supplemental briefs addressing this Court's recent decision in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), *cert. denied*, ─── U.S. ───, 120 S.Ct. 792, 145 L.Ed.2d 668 (2000). In *Williams*, the Court held, over this author's objection, that 42 Pa.C.S. §§ 9791–9799.6 ("Megan's Law") violated federal due process requirements by imposing a presumption that a person convicted of a sexually violent offense is a sexually violent predator, placing the burden on the offender to rebut that presumption, and providing for significantly enhanced penalties, up to a mandatory life term of imprisonment, if the offender failed to rebut the presumption. The transfer provision of the amended Juvenile Act is distinguishable from Megan's Law's sentencing procedure in several respects.

First, Megan's Law created a statutory presumption that persons convicted of certain crimes were sexually violent predators. 42 Pa.C.S. § 9794(b). The Juvenile Act, on the other hand, does not create any statutory presumption about the juvenile, but merely excludes certain violent offenses from the definition of delinquent acts and provides a transfer provision that places the burden of proof on the defendant. 42 Pa.C.S. § 6302. More significantly, the *Williams* Court concluded that the "full panoply" of due process protections, including placing the burden of proof on the Commonwealth, *see* 557 Pa. at 304 n. 12, 733 A.2d at 602 n. 12, was required because the enhanced punishment proceeding was "a separate factual determination, *the end result of which is the imposition of criminal punishment ....*" *Williams, supra* at 304, 733 A.2d at 603 (emphasis added). In such a circumstance, this Court held that the United States Supreme Court's decision in *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), controlled. *Specht* held that separate proceedings, requiring new findings of fact and leading to additional punishment, required that the "full panoply" of due process rights be provided. 386 U.S. at 608–09, 87 S.Ct. 1209. The transfer proceeding in the Juvenile Act is not a separate factual proceeding leading to punishment. Even if the defendant fails to establish that it would serve the public interest to transfer his case to juvenile court, *punishment* will result only if and when the defendant is convicted. That conviction, in turn, will only occur following a trial at which all due process protections are afforded. As this Court noted in *Pyle*, because the Commonwealth continues to bear the burden of establishing every element of the crime charged before any punishment will result, there is no due process infirmity. *Pyle, supra* at 623 n. 12, 342 A.2d at 107 n. 12. Accordingly, *Williams* is inapplicable to the Juvenile Act.

6. Appellant makes two additional claims in this argument. First, he argues that the statute suffers from a "due process infirmity" because it does not immunize any testimony given by a juvenile at the transfer hearing. Second, he argues that the burden of proof is greater under the statute as amended. Neither of these claims has been developed beyond these unsupported assertions and we, of course, will not develop the claims for appellant. In addition, although the Superior Court

46

For the foregoing reasons, we hold that the 1995 amendments to the Juvenile Act are constitutional and, accordingly, we affirm the order of the Superior Court.[7]

Justice NEWMAN concurs in the result.

*sua sponte* discussed the absence of immunity in *dicta,* 708 A.2d at 815 n. 3, neither that claim nor the greater burden of proof claim was actually raised by appellant at any previous stage of the proceedings. Therefore, these claims are waived. Pa.R.A.P. 302(a) (issues not raised below cannot be raised on appeal).

In addition, *amicus curiae,* Defender Association of Philadelphia, raises several issues in its brief in support of appellant that appellant has not raised. An *amicus curiae* is not a party and cannot raise issues that have not been preserved by the parties. Pa.R.A.P. 531(a) (*amicus curiae* may file a brief regarding *those questions before the Court*).

7. Appellant also argues that the amendments to the Juvenile Act are not severable and must all be stricken if any provisions are found to be unconstitutional. Because we find that the amendments are constitutional, we need not address this derivative issue.