J-S08004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAYMAR YOUNG | |
| Appellant | No. 628 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 18, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No: CP-02-CR-0004513-2014

BEFORE:  STABILE, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                              **FILED JULY 19, 2016**

Appellant Taymar Young appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County ("trial court"), following a jury trial that resulted in him being convicted of robbery—serious bodily injury—and conspiracy to commit robbery.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As summarized by the trial court:

> On January 13, 2014, Keyshawn Alford, an eleventh grader at Westinghouse High School, was walking home from school with Jamier Lane, his good friend and football teammate.  As the two (2) young men exited the front door of the school, Jamier noticed a suspicious group of four (4) men standing across the street.  The group caught his attention because they were not dressed in school uniforms, and they did not look like they belonged in the area.  Their presence made Jamier nervous, and

_____

[1] 18 Pa.C.S.A. §§3701(a)(1)(ii) and 903(a)(1), respectively.

he told Keyshawn that they should wait a few minutes to see if the group would leave. The two (2) young men waited for the group to walk down Murtland Avenue and up Hermitage Street before they started walking quickly along the same route. Although the group was initially walking in front of them, Keyshawn and Jamier eventually caught up with the group, passing it when they were near Hermitage Street.

By the time the boys arrived at Kedron Street, Keyshawn and Jamier had separated somewhat, with Keyshawn walking a few yards ahead of Jamier. Keyshawn began to feel as though he was in danger because "it was too quiet." He turned around and saw [Appellant], and Shaquille West, his co-[d]efendant, standing behind him. Although he did not know his name at the time, Keyshawn recognized Mr. West as someone who had dated his friend. [Appellant] pushed Keyshawn and asked him, "What do you got ?" Keyshawn stated that he did not have anything, pointed to something in the street in an attempt to distract the men, and then ran.

The [c]o-[d]efendant, Mr. West, chased Keyshawn down the street, caught up to him, and tackled him. After the tackle, Keyshawn was able to regain his footing, but Mr. West was still able to drag him over to some bushes and hold on to him. [Appellant] then reappeared and began punching Keyshawn in the head and face. As Keyshawn was trying to defend himself, he heard [Appellant] say "give me a joint," which Keyshawn understood to mean that [Appellant] wanted Mr. West to give him a gun. [Appellant] took possession of a black firearm and pointed it at Keyshawn's stomach, informing Keyshawn that the gun was, in fact, loaded. At that point, Keyshawn believed that a police cruiser happened by the area because Mr. West turned to [Appellant] and said "come on, hurry up." [Appellant] put the gun away and started walking away with his [c]o-[d]efendant.

As [Appellant and the co-d]efendant[] were leaving, [Appellant] in this case handed the firearm to his co-[d]efendant, Mr. West. Mr. West turned around, waved the gun at Keyshawn, and said, "If you tell anybody, I got something for you." Keyshawn waited until [Appellant] and [c]o-[d]efendant walked away before he and Jamier went to his grandmother's house. Keyshawn was later treated at UPMC Children's Hospital of Pittsburgh for a mild concussion and some minor scrapes and bruises.

Keyshawn subsequently located Mr. West's Facebook page, immediately recognizing him as one of the people that robbed him and pointed a gun at him. He was able to find Mr. West on Facebook because they shared mutual friends. Once he accessed Mr. West's Facebook page, he scrolled through Mr. West's list of Facebook friends and located [Appellant], whom he immediately recognized from the robbery.

Trial Court Opinion, 7/30/15, at 3-6. Appellant subsequently was charged with robbery and conspiracy to commit robbery. Claiming that he was sixteen years old, on April 11, 2014, Appellant filed a decertification motion, seeking a transfer to the juvenile court. Following a decertification hearing, the trial court denied the transfer motion on September 5, 2014. Thereafter, Appellant's case proceeded to a jury trial, following which Appellant was found guilty of the above-mentioned offenses. The trial court sentenced Appellant to, *inter alia*, 48 to 96 months' incarceration. Appellant timely appealed to this Court. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises only two issues for our review:

1. Whether the juvenile decertification process is unconstitutional as it does not allow for the minor child to have a jury conclude beyond a reasonable doubt that the juvenile should be subjected to an adult penalty beyond the juvenile statutory maximum penalty in violation of the minor child's Sixth Amendment rights[.]

2. Whether placing the burden of proof on a juvenile defendant in a decertification process violates both the juvenile's procedural and substantive due process rights[.]

Appellant's Brief at 3.

Initially, we note that an appellant bears a heavy burden to prove a statute unconstitutional. "[A] statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." **Commonwealth v. Cotto**, 753 A.2d 217, 219 (Pa. 2000). Additionally, "there is no constitutional guarantee to special treatment for juvenile offenders. Any right to treatment as a juvenile is

derived from statutory law and is defined by the legislature." *In Interest of J.F.*, 714 A.2d 467, 470 (Pa. Super. 1998).

The legislature, through the Juvenile Act, placed adjudication of delinquent acts when the defendant is a child automatically within the jurisdiction of juvenile court. 42 Pa.C.S.A. § 6322(a). However, Section 6302 of the Juvenile Act excludes robbery from the definition of a delinquent act where, as in this case, a deadly weapon was used in the commission of the offense. *See* 42 Pa.C.S.A. § 6302 "Delinquent Act" (2)(ii)(D); *see also* 18 Pa.C.S.A. § 3701 (relating to robbery). Prosecution for an offense excluded from the definition of a delinquent act commences in criminal court rather than in juvenile court. 42 Pa.C.S.A. § 6322(a); *see also Commonwealth v. Ramos*, 920 A.2d 1253, 1258 (Pa. Super. 2007) ("[W]hen the crime involved is one excluded from the Juvenile Act's definition of a delinquent crime, the charge is automatically within the jurisdiction of the criminal court and jurisdiction is presumptively proper."), *appeal denied*, 932 A.2d 1288 (Pa. 2007).

When a criminal court has jurisdiction over a crime committed by a juvenile pursuant to 42 Pa.C.S.A. § 6322(a), the juvenile may request that her case be decertified, *i.e.*, removed to the jurisdiction of juvenile court. *Commonwealth v. Sanders*, 814 A.2d 1248, 1250 (Pa. Super. 2003) *appeal denied*, 827 A.2d 430 (Pa. 2003). This process has been upheld as constitutional by this Court and our Supreme Court. *See Cotto*, 753 A.2d at 217, 222 (holding as constitutional the 1995 Amendments to the Juvenile

Act which vest original jurisdiction in the criminal courts for specified violent felonies and grant the decision-maker discretion in determining whether to transfer a direct file case to juvenile court); *see also Commonwealth v. Aziz*, 724 A.2d 371, 374 (Pa. Super. 1999) ("We find that the amendments to the Act, which cause juveniles accused of the enumerated offenses to appear first in criminal court, are not arbitrary and instead are rationally related to the statute's objectives."), *appeal denied*, 759 A.2d 919 (Pa. 2000).

Appellant first argues that the decertification process is unconstitutional as violating the Sixth Amendment to the United States Constitution because a judge, rather than a jury, decides decertification. Appellant bases this claim on our United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) which, in his words, "conclude[es] that a sentencing factor that has the potential to enhance the punishment triggers Sixth Amendment protections. . . ." Appellant's Brief at 11. Essentially, Appellant argues that the denial of decertification is a factor that could enhance a sentence beyond the statutory maximum allowed for a juvenile, and therefore, under *Apprendi*, only a jury may deny decertification. *Id.* at 17.

The United States Supreme Court's decision in *Apprendi* concerned a statute that authorized a judge to increase the maximum sentence after a jury's verdict based on the judge's **finding**, by a preponderance of the evidence, of the fact that the crime was racially motivated. *Apprendi*, 120

S.Ct. at 2348. We previously summarized the rule established by **Apprendi** and its progeny as follows:

> In the watershed **Apprendi** case, the Supreme Court held that any fact except a prior conviction that increases the range of punishment beyond the statutory maximum penalty for that crime must be charged in an indictment, submitted to the jury, and proven beyond a reasonable doubt. The Court further defined the term statutory maximum in **Blakely v. Washington**, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). According to the **Blakely** Court, the statutory maximum is the maximum sentence a court can impose based solely on the facts reflected by the jury verdict or admitted by the defendant during his guilty plea.

**Commonwealth v. Stokes**, 38 A.3d 846, 858-59 (Pa. Super. 2011).

Appellant's reliance on **Apprendi** is misplaced. Decertification is a legislatively established procedure whereby a judge must consider a juvenile's amenability to treatment within the juvenile system as delineated by statutorily defined factors. 42 Pa.C.S.A. § 6355(a)(4)(iii). Decertification is not a fact that increases the maximum penalty that may be imposed as already determined by a jury's verdict or an accused's guilty plea. Indeed, a judge does not make any findings of fact regarding elements of the crimes charged during the decertification process. Further, there is no jury involved in this process. **Apprendi**, therefore, is factually and legally distinguishable from the instant case. As such, Appellant is not entitled to relief on his first issue.

Appellant next argues that placing the burden of proof on a juvenile defendant in the decertification process violates both the juvenile's

procedural and substantive due process rights. In **Cotto**, our Supreme Court addressed and rejected this issue and held as follows.

> [T]he legislature has determined in its judgment that, in certain instances, violent felonies in addition to murder are sufficiently serious to merit vesting original jurisdiction in the criminal courts, while affording the defendant an opportunity to show that his is the exceptional case warranting juvenile treatment.
>
>     . . . .
>
> . . . [T]he legislature's informed determination that juveniles fifteen years of age and older who commit such offenses are not initially amenable to rehabilitation under the Juvenile Act, unless they prove otherwise by a preponderance of the evidence, is equally reasonable. There is nothing in the Constitution to prevent the legislature from making such a judgment.

**Cotto**, 753 A.2d at 223-24.

Appellant acknowledges that **Cotto** is controlling on this issue, but asks us to reconsider our Supreme Court's holding. Appellant's Brief at 22. This Court, however, has a "duty and obligation to follow the decisional law of [the Supreme Court of Pennsylvania]." **Commonwealth v. Shaffer**, 734 A.2d 840, 844 n.6 (Pa. 1999). Because **Cotto** considered and resolved Appellant's second issue, we are bound by our Supreme Court's holding in **Cotto**, and Appellant is not entitled to relief on this claim.[2]

_____

[2] To the extent that Appellant relies on **Roper**, **Graham**, and **Miller** to support his argument that "juveniles are constitutionally distinct from adults," and therefore it is unconstitutional to shift the burden of proof in decertification onto juvenile defendants, these cases are easily distinguishable from the one _sub judice_ as the foregoing only address juvenile sentencing. Appellant's Brief at 21; **Commonwealth v. Batts**, 125 A.3d 33, 37 (Pa. Super. 2015). None of these cases pertain to the juvenile decertification process.

Based on the foregoing, we cannot conclude that Appellant is entitled to relief on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016