J-S01040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| HERMAN ALBERT ARMOLT, JR. | : | |
| Appellant | : | No. 459 MDA 2020 |

Appeal from the Judgment of Sentence Entered February 11, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0003273-2018

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JANUARY 25, 2021**

Appellant Herman Albert Armolt, Jr. appeals from the judgment of sentence entered by the Court of Common Pleas of Cumberland County after Appellant was convicted of Involuntary Deviate Sexual Intercourse (IDSI), Aggravated Indecent Assault, and Indecent Assault.  Appellant claims the trial court did not have jurisdiction to try him as an adult for crimes he committed as a juvenile.  In addition, Appellant alleges that the trial court committed numerous constitutional violations in allowing his trial.  We affirm.

In November 2018, Appellant was charged in connection with the aforementioned crimes which Appellant committed as a juvenile.  At Appellant's jury trial, it was determined that in the 1980's, Harold Lindsey, a single father, had sole custody of his two minor daughters, C.L. and S.L.  Notes

_____

[*] Former Justice specially assigned to the Superior Court.

of Testimony (N.T.), 11/4/19 – 11/7/19, at 77. Harold became romantically involved with Bonnie Armolt, who moved into Harold's residence along with three of her minor children, Melissa, Brian, and Appellant (also known as J.R.). N.T. at 78-79. Appellant's older brother, Keith, moved into the residence several years later. N.T. at 87.

C.L. alleged that Appellant engaged in a course of conduct initially began as physical abuse and progressed to sexual abuse over a span of years from the late 1980s to the early 1990s. C.L. recalled that Appellant's assaults started when she was seven and continued until she was fifteen or sixteen. N.T. at 87, 97, 193-94, 347-48. From the years 1987 and 1994, Appellant was ten to seventeen years of age. N.T. at 348. C.L. claimed that Appellant forced her to have sexual intercourse and to give him oral sex on numerous occasions when her father was working at night. N.T. at 87-97.[1] C.L. claimed that she tried to fight Appellant off by kicking and screaming but he held her down. N.T. at 93.

C.L. also indicated that Appellant forced her younger sister, S.L., (who was five years old at that time) to touch C.L.'s vagina with her hand despite

_____

[1] In addition, C.L. claimed that Appellant's brothers, Keith and Brian, also physically and sexually assaulted her. Appellant was jointly tried with Keith Armolt, who was acquitted of all charges. Brian Armolt passed away before the charges were brought in this case. N.T. at 91.

Moreover, C.L. alleged that Appellant's mother, Bonnie, was physically abusive to her. N.T. at 192. While C.L. also gave extensive testimony regarding the physical abuse that she was subjected to, we limited our discussion to the conduct for which Appellant was charged and convicted with in this case.

- 2 -

her protests. N.T. at 105-106. C.L. recalled that she and S.L. would try to keep Appellant and his brothers out of their room by barricading the door with furniture, but were unsuccessful. C.L. testified that Appellant and his brothers referred to her as "Shitty" and S.L. as "Vaseline." N.T. at 79.

At one point, C.L. ran away from home and went the home of a friend, who convinced C.L. to talk to authorities. N.T. at 108-112. C.L. testified that she reported the sexual abuse to a state trooper, who became "teary-eyed" and told C.L. he would help her. N.T. at 112. C.L. recalled that the unnamed trooper brought C.L. to Children and Youth Services (CYS) where a CYS caseworker told her that, as C.L. did not have any physical bruises on her body, that there was nothing they could do for her. N.T. at 110-13.

C.L. returned home, where Appellant continued to abuse her. N.T. at 113-14. C.L. responded by learning self-defense through karate lessons. N.T. at 94, 100, 114. C.L. indicated that the abuse continued until one occasion when Appellant's mother, Bonnie, started pulling C.L.'s hair; C.L. fought back and violently punched Bonnie with closed fists. N.T. at 115. C.L. threatened to do the same to Appellant if he ever touched her again. N.T. at 117.

C.L.'s father then forced C.L. to leave his home and live with her mother. N.T. at 116. C.L. testified that she did not tell her father about the abuse because she feared that he would hurt Appellant and be imprisoned himself. N.T. at 107-108. C.L. indicated that she revealed the abuse to her father in 2004 before he died from cancer. N.T. at 118-19. After C.L. reported

the abuse again to the State Police in 2016, the instant charges were filed against Appellant in November 2018. N.T. at 121.

The prosecution also called S.L., C.L.'s sister, to testify. While S.L. indicated that she never saw Appellant sexually assault C.L., she confirmed that Appellant had forced her to touch C.L.'s vagina with her fingers and her mouth when they were minors living in their father's home.[2] N.T. at 324-25. S.L. also testified that she and C.L. attempted to barricade themselves in their bedroom to protect themselves against Appellant and his brothers. N.T. at 325. S.L. also shared that Appellant's nicknames for her and her sister were "Vaseline" and "Shit." N.T. at 320.

Pennsylvania State Trooper John Boardman testified that he found records that indicated that the state police investigated a runaway report for C.L. on April 29, 1996, but Trooper Boardman was unable to locate a copy of the police report. N.T. at 384. Records from CYS from 1996 were also not available to evaluate whether caseworkers had any interaction with C.L. at that time. N.T. at 384-85. Trooper Boardman also indicated that there was never a report made to the State Police about any abuse allegations towards C.L.'s sister, S.L.; Trooper Boardman indicated that he first heard about S.L.'s allegations at trial. N.T. at 396.

At the conclusion of the trial, the jury convicted Appellant of two counts of IDSI and one count each of Aggravated Indecent Assault and Indecent

---

[2] Appellant was not charged in connection with these allegations as S.L. did not wish to pursue charges.

Assault, but acquitted Appellant of Rape. The trial court deferred sentencing to allow for the Sexual Offender Assessment Board (SOAB) to determine whether Appellant was a sexually violent predator (SVP). The SOAB found that Appellant was not an SVP.

On February 11, 2020, the trial court sentenced Appellant to four to eight years' imprisonment for each IDSI conviction, and one to two years' imprisonment for Aggravated Indecent Assault. As the trial court set all of Appellant's individual sentences to run concurrently, Appellant was given an aggregate sentence of four to eight years' imprisonment.

On March 10, 2020, Appellant filed a timely appeal. Thereafter, on March 10, 2020, the trial court filed an order directing Appellant to file a concise statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days of the entry of its order on the docket. On May 4, 2020, Appellant filed his concise statement.[3]

---

[3] On March 16, 2020, the Pennsylvania Supreme Court declared a general, statewide judicial emergency on account of COVID-19. **In re: General Statewide Judicial Emergency**, 228 A.3d 1281 (Pa. 3/16/20) (*per curiam*). In subsequent orders, the Supreme Court generally suspended "all time calculations for the purposes of time computation relevant to court cases … as well as time deadlines[.]" **In re: General Statewide Judicial Emergency**, 228 A.3d 1283 (Pa. 3/18/20) (*per curiam*). On April 28, 2020, the Supreme Court ordered: "legal papers or pleadings (other than commencement of actions where statute of limitations may be in issue) which are required to be filed between March 19, 2020, and May 8, 2020, generally shall be deemed to have been filed timely if they are filed by close of business on May 11, 2020." **In re: General Statewide Judicial Emergency**, 230 A.3d 1015 (Pa. 4/28/20) (*per curiam*) (emphasis omitted).

Appellant raised the following issues on appeal:

1. Whether the Trial Court erred in retaining jurisdiction to try and sentence Appellant as an adult for crimes that he committed as a juvenile.

2. Whether the Trial Court erred by conferring adult jurisdiction and imposing a four to eight-year prison sentence upon an individual for crimes committed while the individual was a juvenile violated the Equal Protection, Due Process and Cruel and Unusual Punishment clauses to the United States and Pennsylvania Constitution.

Concise Statement, 5/4/20, at 1.

Appellant first contends that the trial court erred in allowing the Commonwealth to pursue adult charges against Appellant for sexual offenses Appellant committed as a juvenile.[4]  As the victim had claimed that she initially reported the assaults in 1996 while the Appellant was still a juvenile, Appellant suggests that the Commonwealth was required to proceed in juvenile court and Appellant should not be required to serve an adult prison sentence.

This Court has explained that the special treatment provided to criminal offenders under the Juvenile Act is created by statute and is not a constitutional requirement.  *Commonwealth v. Monaco*, 869 A.2d 1026 (Pa.Super. 2005) (citing *Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217 (2000)).  The Juvenile Act's special protections are only applicable to a "child,"

_____

While Appellant was ordered to file his concise statement by March 31, 2020, we deem his concise statement filed on May 4, 2020 to be timely in light of the Supreme Court's suspension of time computation during the statewide judicial emergency.

[4] Appellant does not challenge the sufficiency or weight of the evidence presented in support of his convictions.

which the Juvenile Act defines in relevant part as an individual who "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years." 42 Pa.C.S.A. § 6302.

In **Commonwealth v. Anderson**, 630 A.2d 47 (Pa.Super. 1993), this Court held that a twenty-two year old defendant could be tried as an adult for charges he committed at the age of sixteen and thus reversed a trial court's dismissal of charges against that defendant. This Court determined that Anderson did not satisfy the Juvenile Act's definition of a "child" because he was twenty-one years old when he was arrested and charged. This Court also noted that Anderson had deliberately avoided the justice system by failing to appear at his scheduled hearing as a juvenile, and therefore, "forfeited any benefits he may have derived from the Juvenile Court system." **Id**. at 97.

In **Monaco**, this Court held on collateral appeal that the trial court did not err in failing to transfer the appellant's case to Juvenile Court and trying the appellant, who was twenty-two years old upon his arrest, as an adult for sexual assaults he committed starting at the age of fifteen and continuing until the age of twenty-one. Citing the rationale in **Anderson**, the **Monaco** Court found that Appellant did not qualify as a "child" under the statutory definition in the Juvenile Act at the time of his arrest and no longer "fell within the ambit of the juvenile justice system." **Monaco**, 869 A.2d at 1029.

Moreover, while **Monaco** court acknowledged that the appellant was not responsible for the delay in his prosecution, the **Monaco** court found the

rationale in **Anderson** would apply "absent some improper motivation for the delay." **Monaco**, 869 A.2d at 1030.

Likewise, in this case, Appellant, who was arrested at age forty-one, does not qualify as a "child" under the Juvenile Act and is not entitled to the statutory protections provided therein. Moreover, Appellant has not identified any improper motivation for any delay in prosecution on the part of the Commonwealth.[5] Pursuant to **Anderson** and **Monaco**, we conclude that the trial court properly tried and sentenced Appellant as an adult.

In Appellant's second claim, he contends that the trial court "erred by conferring adult jurisdiction and imposing a four to eight-year prison sentence upon an individual for crimes committed while the individual was a juvenile violated the Equal Protection, Due Process and Cruel and Unusual Punishment clauses to the United States and Pennsylvania Constitution." 1925(b) statement, at 1.

However, Appellant does not develop any meaningful discussion in his appellate brief to support his allegation that he was denied equal protection of the law or due process or that he was sentenced to cruel and usual punishment. Appellant's failure to develop these claims with argument, applicable authority, and pertinent analysis results in the waiver of his claims. **Commonwealth v. Antidormi**, 84 A.3d 736 (Pa.Super. 2014) ("[a]s

---

[5] We acknowledge that Appellant was not responsible for the delay in this prosecution.

Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development").

To be contrary, Appellant appears to argue in his appellate brief that the trial court violated his constitutional rights under the *ex post facto* clause of the U.S. Constitution by sentencing Appellant to an adult prison term for crimes he committed as a juvenile because he received a greater punishment that he would have received if adjudicated delinquent in juvenile court.

As this claim was not raised in the trial court or in Appellant's 1925(b) statement, it is waived on appeal. **See** Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa.Super. 2020) (citing **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306, 309 (1998)) ("any issue not raised in a 1925(b) statement will be deemed waived for appellate review").

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Lazarus joins the Memorandum.

Judge McCaffery Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/25/2021

- 9 -