J-A30030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| D.A.R. | |
| Appellee | No. 694 MDA 2016 |

Appeal from the Order Entered April 18, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005020-2015

BEFORE:  BOWES, OLSON and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 25, 2017**

Appellant, the Commonwealth of Pennsylvania (the Commonwealth), appeals from the order entered on April 18, 2016, granting a motion filed by D.A.R. to decertify this matter to the Juvenile Division of the Court of Common Pleas of Lancaster County.  Upon careful review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Appellee, D.A.R.] is charged with two counts of robbery, two counts of criminal conspiracy to commit robbery, and two counts of theft by unlawful taking or disposition. [D.A.R.'s] charges arose from two similar incidents on September 14, 2015, and September 20, 2015.  [D.A.R.] allegedly called the Lancaster City Cab company to request a pick-up on each of those dates.  When the driver arrived on each occasion, a co-conspirator allegedly pressed what appeared to be a gun against the driver and demanded money.  [D.A.R.] was seventeen (17) years old at the time the alleged offenses occurred.

The case was direct-filed in adult court, pursuant to 42 Pa.C.S.A. § 6302. [D.A.R.] waived his preliminary hearing before Magisterial District Judge David Miller on October 27, 2015, acknowledging that a *prima facie* case existed with respect to the charges against him. On November 9, 2015, [D.A.R.], by and through his attorney Randall L. Miller, Esq., filed an emergency motion to remand [the] case to [the] Juvenile Division of the Court of Common Pleas of Lancaster County. On December 7, 2015, the [trial] court entered an opinion (hereinafter "remand opinion") finding that the charges were properly filed in adult criminal court, as well as an order denying [D.A.R.'s] emergency motion.

On November 18, 2015, [D.A.R.] filed a motion to decertify [the] case to [the] Juvenile Division of the Court of Common Pleas of Lancaster County, Pennsylvania, pursuant to 42 Pa.C.S.A [§] 6355 (hereinafter "motion to decertify"). On December 8, 2015, the [trial] court issued an order appointing Jonathon M. Gransee, Psy.D., to perform a psychological evaluation of [D.A.R.]. Following a decertification hearing on April 12, 2016, the [trial] court issued its opinion and order, dated April 18, 2016. The [trial] court found "that the transfer of this case from criminal proceedings will serve the public interest." The [trial] court found [D.A.R.'s] evidence to be credible, and held that "[D.A.R.] has met his burden to prevail on a petition requesting transfer from criminal proceedings." On April 28, 2016, the Commonwealth filed an interlocutory appeal to [this] Court. On May 3, 2016, the [trial] court entered an order directing the Commonwealth to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On May 19, 2016, the Commonwealth filed its statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). [The trial court filed a sur opinion pursuant to Pa.R.A.P. 1925(a) on June 9, 2016.]

Trial Court Opinion, 6/9/2016, at 1-3 (superfluous capitalization, footnotes and record citations omitted).

On appeal, the Commonwealth presents the following issue for our review:

I.    Did the trial court abuse its discretion by misapplying or overriding the law in its consideration of 42 Pa.C.S.A. § 6355(a)(4)(iii) with respect to the following factors:

    A. Factor (A) – impact of offense on victims

    B. Factor (B) – impact of offense on the community

    C. Factor (D) – the nature and circumstances of the offense allegedly committed

    D. Factor (E) – the degree of the child's culpability

Commonwealth's Brief at 1 (complete capitalization omitted).

The Commonwealth generally argues that the trial court abused its discretion or erred as a matter of law by "improperly shifting the burden of proof from [D.A.R.] to the Commonwealth" when examining various factors for decertification from the criminal court to the juvenile court. *Id.* at 13. With regard to Factor (A) above, the Commonwealth argues that the trial court erred by concluding it could not determine the effect the crimes had upon the victims because there was no victim testimony. *Id.* at 12. The Commonwealth avers it was not required to produce such evidence. *Id.* at 13. Additionally, the Commonwealth contends that the trial court erred in assessing Factor (A) by relying upon Dr. Gransee's opinion that D.A.R. is amenable to rehabilitation, because "the likelihood of rehabilitation is irrelevant as to the effect of the crime on the victims." *Id.* at 14. Concerning the impact of the offense on the community (Factor (B)), the

Commonwealth contends that the trial court "created an artificial standard[,]" and then shifted the burden of production, when it stated that the robberies did not have "a unique detrimental effect on the community where it occurred, as no testimony was presented to that effect." *Id.* at 15. With regard to the nature and circumstances of the offense allegedly committed and the child's culpability factors (Factors (D) and (E)), the Commonwealth argues that the trial court's characterization of D.A.R.'s involvement in the alleged crimes as limited, because he was not physically in control of the firearm used in the commission of both robberies, was erroneous because D.A.R. shared equal responsibility as an accomplice. *Id.* at 18-21.

In *Commonwealth v. Brown*, 26 A.3d 485 (Pa. Super. 2011), this Court set forth the principles governing our review of a decertification order:

> The Juvenile Act, 42 Pa.C.S.A. § 6301[,] *et seq.,* is designed to effectuate the protection of the public by providing children who commit 'delinquent acts' with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. 42 Pa.C.S.A. § 6301(b)(2). The Juvenile Act defines a 'child' as a person who is under eighteen years of age. 42 Pa.C.S.A. § 6302. Typically, most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas.
>
> Our legislature, however, has deemed some crimes so heinous that they are excluded from the definition of 'a delinquent act.' Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile is charged with a crime, including murder or any of the other offenses excluded from the definition of 'delinquent act' in 42 Pa.C.S.A. § 6302, the

criminal division of the Court of Common Pleas is vested with jurisdiction. ***See*** 42 Pa.C.S.A. § 6302[.]

When a case involving a juvenile goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called 'decertification.' To obtain decertification, it is the juvenile's burden to prove, by a preponderance of the evidence,[1] that transfer to the juvenile court system best serves the public interest. 42 Pa.C.S.A. § 6322(a).

Pursuant to § 6322(a), the decertification court shall consider the factors contained in § 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. These factors are as follows:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

---

[1] A preponderance of the evidence is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence. ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005) (internal citation and quotations omitted).

(I) age;

(II) mental capacity;

(III) maturity;

(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;

(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

(VIII) probation or institutional reports, if any;

(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

While the Juvenile Act requires that a decertification court consider all of these factors, it is silent as to the weight assessed to each by the court.[2] However, [w]hen a juvenile seeks to have his case transferred from the criminal division to the juvenile division, he must show that he is in need of and amenable to treatment, supervision or rehabilitation in the juvenile system. If the evidence

---

[2] "A decertification court must consider all the facts set forth in § 6355 of the Juvenile Act, but it need not address, *seriatim,* the applicability and importance of each factor and fact in reaching its final determination." **Commonwealth v. L.P.**, 137 A.3d 629, 636 (Pa. Super. 2016) (citation omitted). "Furthermore, we presume the trial court considered the entire record in making its determination, and it is not required to give a detailed explanation justifying its decision." **Id.**

> presented fails to establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division.
>
> The ultimate decision of whether to certify a minor to stand trial as an adult is within the sole discretion of a decertification court. This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will.

**Brown**, 26 A.3d at 491–493 (most quotations, some citations, and emphasis omitted).

Here, the trial court "assessed the evidence and testimony presented and believe[d] that [D.A.R.] will have a greater likelihood of successful rehabilitation in the juvenile court system than in adult criminal court [and that D.A.R.'s] successful rehabilitation [will] serve[] the public interest." Trial Court Opinion, 6/9/2016, at 8. The trial court based its opinion, in large part, upon the testimony of Dr. Gransee wherein he opined that D.A.R. "has borderline intellectual functioning, meaning he functions below what is expected for children his age, and has been diagnosed with Attention-Deficit/Hyperactivity Disorder, which manifests itself in inattention and impulsivity." **Id.** at 10. "Moreover, [the trial court found D.A.R.] presented credible evidence that the adult co-defendant, Michael Watkins, had a troublesome influence on [D.A.R.] and was spending time with [D.A.R.] around the time of the robberies." **Id.** at 7. The trial court also

concluded that while D.A.R. "has had some [prior] success under the supervision of the Office of Juvenile Probation, [he] has never had the opportunity to receive treatment through placement or [r]esidential [t]reatment [which] could successfully address [his] needs … by the time he turns twenty-one (21)." *Id.* at 11, 13. The Commonwealth does not dispute that D.A.R. produced the above-mentioned evidence and the record is devoid of evidence introduced by the Commonwealth to refute the foregoing findings. Thus, we conclude that D.A.R. met his burden of showing that Factors (C), (F), and (G) of Section 6355(a)(4)(iii) supported decertification.

Further, while the trial court cites the Commonwealth's failure to produce rebuttal evidence in support of Factors (A), (B), (D), and (E), we disagree that the trial court impermissibly shifted the burden of production to the Commonwealth. The burden may have shifted had D.A.R. not produced evidence. As it stands, however, the trial court merely stated that without additional rebuttal evidence from the Commonwealth, the trial court was required to weigh the individual factors based solely upon the evidence presented and not based upon conjecture. Upon review, we conclude the evidence presented by D.A.R. was sufficient, under the preponderance of the evidence standard, to support the trial court's decertification determination in and of itself under the Factors (A), (B), (D), and (E) above. We will examine those factors separately.

First, with respect to Factor (A), the trial court generally found that the robberies had a negative impact on the victims; we read this as a favorable finding for the Commonwealth. The trial court declined to go further to say that this factor outweighed others, rendering decertification improper. Instead, the trial court weighed this factor, along with the others, to determine that D.A.R. met his burden of production. This is neither grounds for finding a misapplication of law, nor a basis to disturb the trial court's ruling given the Juvenile Act is silent as to what weight is attributable to each factor.

Second, with regard to the impact of the offense on the community pursuant to Section 6355(a)(4)(iii)(B), the trial court determined "that crime generally, and certainly the crime of robbery, has a negative impact on the community[,]" but, the trial court did not "find [D.A.R.'s] crime to have had a unique detrimental effect on the community where it occurred[.]" Trial Court Opinion, 4/18/2016, at 3. In its sur opinion, the trial court clarified it was not imposing a new standard by requiring proof of a unique detrimental effect, but instead "was merely emphasizing, once again, that if a negative effect of a crime was all that was necessary to prevent a case from being transferred to juvenile court, then a decertification hearing would be a pointless activity." Trial Court Opinion, 6/10/2016, at 5. We agree with the trial court's assessment. Here, D.A.R. presented evidence that, although the participants pre-planned the robberies, the offenses constituted garden-variety hold-ups. There was simply no evidence to suggest these

robberies impacted the community more than other armed robberies. For example, there was no evidence tending to show that, in the wake of the robberies, Lancaster City Cab no longer offered transportation services to the area where the crimes occurred. The trial court weighed Factor (B) and determined it militated in favor of decertification. We will not usurp that conclusion.

Next, with respect to the nature and circumstances of the alleged offense, the trial court looked at D.A.R.'s participation in the incident, finding that "accomplice liability is not a factor[.]" *Id.* at 6. Initially, we recognize that

> [o]ur task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S.A. § 1921(a). In pursuing that end, we are mindful that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). Indeed, as a general rule, the best indication of legislative intent is the plain language of a statute. In reading the plain language, words and phrases shall be construed according to rules of grammar and according to their common and approved usage, while any words or phrases that have acquired a peculiar and appropriate meaning must be construed according to that meaning. 1 Pa.C.S.A. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly,

> 1 Pa.C.S.A. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.
>
> Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S.A. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S.A. § 1901.

*In re K.A.P.*, 916 A.2d 1152, 1155–1156, (Pa. Super. 2007).

Here, the trial court is required to consider "the nature and circumstances of the offense **allegedly committed by the child**[.]" 42 Pa.C.S.A. § 6355(a)(4)(iii)(D) (emphasis added). The statutory language is clear that the trial court is required to examine the nature and circumstances of the child's conduct. The statute is silent regarding accomplice liability. Thus, under a plain meaning reading of the statute, the trial court's sole task is to examine the juvenile's role in the alleged crimes. Accomplice liability may be a viable theory under which convictions can be obtained. However, the overarching object here is to assess a juvenile's amenability to treatment. If a possible conviction based upon accomplice liability defeated participation in the juvenile system, then decertification would be futile in every instance where a juvenile even remotely aided in the commission of a crime. Moreover, the legislative intent behind decertification is to identify

- 11 -

juveniles amenable to treatment in the juvenile system, not to speculate as to whether a juvenile could be found guilty in the adult system. Under a plain reading of Section 6355(a)(4)(iii)(D), we discern no abuse of discretion or misapplication of law in the trial court's determination that D.A.R. "was not the person who actually possessed a weapon and robbed the victims" and he "participate[d] in planning and mak[ing] phone calls to the taxicab company for the adult co-defendant." Trial Court Opinion, 6/10/2016, at 7.

Moreover, upon review, we did not discover decisional law to support the proposition that the trial court should consider accomplice liability in rendering a decision on decertification. However, we find some guidance in our Court's decision in *Commonwealth v. Ramos*, 920 A.2d 1253 (Pa. Super. 2007). In *Ramos*, the juvenile "challenge[d] the trial court's determination that he possessed a deadly weapon so as to exclude him from the jurisdiction of the juvenile court." *Ramos*, 920 A.2d at 1257. Similar to this case, Ramos "and his cohorts went on a crime spree wherein they robbed several business establishments at gunpoint[.]" *Id.* at 1254. "[Defense] [c]ounsel emphasized that [Ramos] consistently maintained the weapons were not real guns, but that he possessed a BB gun and his cohort(s) possessed a paintball gun or guns." *Id.* at 1259. We determined that Ramos "bore the burden of proving that the gun was not a deadly weapon." *Id.* Further, we found, "[i]f he actually used an item during a robbery that could not be construed as a deadly weapon, the onus was upon him to present it, or evidence relative thereto, to the court to support his

[claim]." *Id.* The *Ramos* Court did not rely on a theory of accomplice liability in determining decertification. As suggested in *Ramos*, the juvenile bears the burden of producing evidence that he did not actually use a deadly weapon to support decertification. Here, there is no dispute that D.A.R. produced evidence that his co-defendant possessed the firearm during the commission of the alleged robberies. While D.A.R. is accountable, in certain circumstances, for all of the crimes of a co-defendant at trial,[3] at this stage of this case, the trial court is merely considering the juvenile's role in the alleged crimes along with his chance of rehabilitation in the juvenile system. If, by a preponderance of the evidence, the juvenile shows that treatment is appropriate, decertification is proper. Thus, we discern no abuse of

---

[3] We previously determined:

> [A] person may be found guilty of a criminal offense if he acts as an accomplice. 18 Pa.C.S.A. §§ 306(a), 306(b)(3). An accomplice is someone who, with the intent of promoting or facilitating the commission of the offense, aids or agrees or attempts to aid [another person] in planning or committing the crime. 18 Pa.C.S.A. § 306(c)(1)(ii). The criminal intent necessary to establish accomplice liability is identical to the criminal intent necessary to establish conspiracy. Finally, even if a conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Hennigan*, 753 A.2d 245, 254 (Pa. Super. 2000) (internal case citations, brackets and quotations omitted).

discretion in examining D.A.R.'s actual role in the alleged crimes when applying Section 6355(a)(4)(iii)(D).

For similar reasons, we discern no abuse of discretion by the trial court in analyzing Section 6355(a)(4)(iii)(E). Factor (E) states, the trial court is to assess "the degree of **the child's** culpability." Again, the focus is on D.A.R.'s (and not the co-defendant's) degree of culpability. Here, the trial court determined that D.A.R. "plann[ed] and [made] phone calls to the taxicab company for the adult co-defendant" who "had a troublesome influence" on D.A.R. Trial Court Opinion, 6/10/2016, at 7. Accordingly, the trial court determined that while D.A.R. was culpable, his actions were spurred on by his adult co-defendant. The trial court further recognized "[i]mpulsivity, keeping poor company, and being influenced by negative peers are problem areas in which the juvenile system is well equipped to provide treatment and rehabilitation." *Id.* at 8. We discern no abuse of discretion.

Accordingly, having reviewed the evidence, the statutory factors set forth under the Juvenile Act for decertification, and the trial court's conclusions, we confirm that D.A.R. met his burden of proof to support decertification to juvenile court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/25/2017</u>