J-S17029-22

2022 PA Super 193

IN THE INTEREST OF: J.C.            :      IN THE SUPERIOR COURT OF
                                    :              PENNSYLVANIA
                                    :
APPEAL OF: J.C.                     :
                                    :
                                    :
                                    :
                                    :
                                    :
                                    :      No. 2114 EDA 2021

Appeal from the Order Entered August 19, 2021
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s):  CP-45-JV-0000171-2019

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

CONCURRING OPINION BY BOWES, J.:            **FILED NOVEMBER 17, 2022**

       I agree with my learned colleagues' decision to vacate the dispositional

order and reverse the adjudication of delinquency.  I write separately to

emphasize that this case does not concern the juvenile court's subject matter

jurisdiction, which I believe the majority infers by discussing situations where

the Juvenile Act expressly vested original jurisdiction in criminal courts.  As

the majority highlights, there are specific instances where the legislature

placed original jurisdiction in the criminal court.  However, this is not one of

those cases.  Rather, this appeal implicates the narrow question concerning a

court's authority to render a given decision in exercising its subject matter

jurisdiction.  Specifically, the issue is whether the juvenile court had the

authority to accept J.C.'s admission[1] to corruption of minors when the offense

applies specifically to actors "the age of eighteen years and upwards."[2]  ***See***

18 Pa.C.S. 6301(a)(1)(i).  More importantly, presuming that the juvenile court

did, in fact, lack the authority to accept J.C.'s admission, may we grant relief

*sua sponte*?[3]

For the reasons explained, *infra*, I believe we can address the dispositive

issue *sua sponte* because J.C.'s admission to the commission of corruption of

minors is void *ab initio* insofar as the juvenile court was not empowered to

---

[1] An admission is the juvenile court corollary to a guilty plea and therefore cannot be accepted unless the court confirms "that the admission is knowingly, intelligently and voluntarily made."  Pa.R.J.C.P. 407(A)(1)(a); ***see also*** Rule 407 comment("The admission colloquy is similar to a guilty plea colloquy in criminal court; however, the juvenile court judge has special responsibilities under the Juvenile Act in providing a balanced attention to the protection of the community, the imposition of accountability for delinquent acts committed, and the development of competencies to enable juveniles to become responsible and productive members of the community.").

[2] As the majority aptly observes, the Commonwealth's delinquency petition alleged that J.C. committed aggravated indecent assault, indecent assault, and open lewdness, but the Commonwealth subsequently agreed to *nolle prosse* those charges in return for the juvenile's admission to corruption of minors, which was designated amended count one in the delinquency petition. ***See*** N.T. Adjudicatory Hearing, 7/7/21, at 31.

[3] Neither J.C., the Commonwealth, nor the juvenile court recognized that, based upon the elements of corruption of minors, a juvenile can never be adjudicated delinquent for that offense.  The Majority characterized this situation as a "legal impossibility," and differentiated it from the issue of evidentiary insufficiency.  ***See*** Majority Opinion at 14, n.18.  In my view, legal impossibility and insufficient evidence are coterminous concepts insofar as both principles concern the Commonwealth's impossible burden of proving the elements of corruption of minors.  Neither implicates subject matter jurisdiction.

accept an admission to an offense that is impossible for a child to commit. *See e.g., Commonwealth v. McIntyre*, 232 A.3d 609, 616 (Pa. 2020) (issue implicates legality "given that a trial court is not empowered . . . to sentence an individual for a non-existent criminal offense."). Accordingly, I respectfully concur.

First, I observe that the juvenile court's subject matter jurisdiction over the delinquency proceedings is unassailable. The traditional concept of subject matter jurisdiction, "[a]lso termed jurisdiction of the subject matter" concerns the court's authority to consider cases of a given nature and grant the type of relief requested. *See* Black's Law Dictionary 857, 1413 (7th ed. 1999) (emphasis omitted). The Courts of Common Pleas have unlimited original jurisdiction except where a statute or rule has vested exclusive original jurisdiction in another Pennsylvania court. *See* 42 Pa.C.S. § 931(a); *see also* Const. art. V, § 5 ("There shall be one court of common pleas for each judicial district (a) having such divisions and . . . (b) having unlimited original jurisdiction in all cases except as may otherwise be provided by law."). It is beyond cavil that "[t]his general grant of authority extends to juvenile delinquency matters, among many others." Pennsylvania Juvenile Delinquency Benchbook (2018), at 3.4.

The Juvenile Act applies exclusively to, *inter alia*, "[p]roceedings in which a child is alleged to be delinquent or dependent." The act defines a delinquent child as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment,

supervision or rehabilitation." 42 Pa.C.S. at § 6302. In this situation, a delinquent act "means **an act designated a crime under the law of this Commonwealth**," other than murder. *Id*. (emphasis added). As the majority observes, since the enactment of the 1995 amendments to the Juvenile Act, the definition has not included enumerated violent offenses committed by a fifteen-year-old child (1) with a deadly weapon or (2) who has been previously adjudicated delinquent of an enumerated offense.[4] *Id*.

Thus, in these specified situations, "the Juvenile Act vests original jurisdiction in the criminal courts . . . ." ***Commonwealth. v. D.S.***, 903 A.2d 582, 584 (Pa.Super. 2006)(quoting ***Commonwealth v. Cotto***, 753 A.2d 217, 219 (2000)). This principle is also ensconced in the Juvenile Act's provisions regarding the transfer of matters to criminal courts for prosecution.

> (e) **Murder and other excluded acts.**—Where the petition alleges conduct which if proven would constitute murder, or any of the offenses excluded by paragraph (2)(ii) or (iii) of the definition of "delinquent act" in section 6302 (relating to

---

[4] As the High Court explained in ***Commonwealth v. Cotto***, 753 A.2d 217, 219 (Pa. 2000)),

> Prior to the amendments, those serious felonies initially came within the jurisdiction of the juvenile courts, subject to certification and transfer to adult court. The 1995 amendments reflect a legislative judgment that the most serious violent felonies should be treated in the same manner as murder charges, *i.e.*, as adult crimes in adult court, at least in the first instance.

Thus, the 1995 amendments explicitly excluded the enumerated offenses from the jurisdiction of the juvenile courts specifically because of the violence innate in the crimes.

definitions), the court shall require the offense to be prosecuted under the criminal law and procedures[.]

42 Pa.C.S. § 6355(e) (emphasis in original).

Our High Court explained that "the Legislature has deemed [these] crimes so heinous" that it removed the offenses from the definition of delinquent act and conferred presumptive jurisdiction to the criminal court. *Commonwealth v. Ramos*, 920 A.2d 1253, 1258 (Pa.Super. 2007). Accordingly, where an offense is excluded from the definition of a delinquent act, the charges may be transferred or filed directly in criminal court. *See Cotto*, *supra* at 219-20.

Instantly, the Commonwealth's delinquency petition alleged that fifteen year-old J.C. committed several delinquent acts, *i.e.* a "crime[s ]under the law of this Commonwealth" that are not specifically excluded from the statutory definition of delinquent act due to their heinous nature. Hence, it is beyond argument that the juvenile court had subject matter jurisdiction to confront the Commonwealth's delinquency petition, rule on the merits of the matters at hand, and, if the allegations are proven beyond a reasonable doubt, adjudicate J.C. delinquent and craft an appropriate disposition best suited for the child's treatment and consistent with the public interest. Clearly, there is no jurisdictional issue in this case.

By invoking the legal framework addressed in *Cotto*, *supra*, *Ramos*, *supra*, and *D.S.*, *supra*, the majority intimates that the juvenile court lacked subject matter jurisdiction in this case. Our High Court in *Cotto* upheld the constitutionality of the Juvenile Act's provisions permitting the criminal

prosecution of a juvenile who was fifteen years old when he committed two armed robberies. In upholding the criminal court's express jurisdiction in this situation, the Supreme Court reasoned,

> The fact that the legislature chose in the past to presumptively extend the benefits of the juvenile system to older juveniles charged with armed robbery and other serious violent offenses does not act as a constitutional restraint upon it to make a different judgment in response to changing societal conditions. It is no less the legislature's prerogative now to limit those benefits than it was to extend them in the first place.

*Id*. at 224. Hence, the High Court recognize that the legislature carved explicit exceptions that removed specific violent offense from the jurisdiction of the juvenile courts.

Similarly, in **Ramos**, **supra** at 1258, this Court observed that a criminal court had exclusive and presumptively proper jurisdiction over a seventeen-year-old's prosecution for armed robbery because the offense was expressly "excluded from the Juvenile Act's definition of a delinquent [act.]" We reasoned, "despite the fact that Appellant was seventeen at the time he committed his offenses, because he committed the predicate offense of robbery while possessing a deadly weapon, his crimes were not considered delinquent acts." **Id**. Thus, "[the a]ppellant's charges were directly filed with the criminal court where original exclusive jurisdiction vests and is presumptively proper." **Id**.

Finally, in **D.S.**, we applied the express legislative exception to the definition of delinquent act to reverse a trial court's refusal to transfer a

fifteen-year-old to criminal court for the prosecution of aggravated assault and robbery with a deadly weapon. Again, we reiterated, "[a]s amended in 1995, the Juvenile Act vests original jurisdiction in the criminal courts for specified violent felonies...committed by minors aged fifteen or older who use a deadly weapon in the commission." **D.S.**, **supra** at 584 (quoting **Cotto**, **supra** at 217). Hence, we concluded, "Because the offenses do not qualify as "delinquent acts," [the] offenses must be prosecuted under the criminal law and procedures." **Id**. at 586.

While the majority acknowledges that corruption of minors is not one of the enumerated violent offenses that the legislature decided should be prosecuted in a criminal court, it relies upon legal authority that discusses that precise situation and implies that because it is impossible for a juvenile to commit corruption of minors, the juvenile court lacked subject matter jurisdiction in this case. **See e.g.**, Majority Opinion at 13-14 ("[I]t logically follows that crimes that can only be committed by adults do not fall within the class of offenses subject to a juvenile adjudications under the [Juvenile] Act."); Majority Opinion at 14, n.18 (relying upon **In re D.S., supra**, for the proposition "where juvenile court lacked subject matter jurisdiction, all juvenile proceedings that took place so far were legally invalid"); Majority Opinion at 16 ("The instant case presents a unique and rare situation because a juvenile can never be adjudicated delinquent for a crime under the Crimes Code, notwithstanding one excluded by 6302, which, by its very definition,

can only apply to adult perpetrators."). This rationale blurs the juvenile court's subject matter jurisdiction with its legal authority to accept J.C.'s admission to an offense that was impossible for the juvenile to commit.

The majority's reliance upon *In re R.A.*, is equally unavailing. That case concerns whether a juvenile court had statutory authority to issue a protective order pursuant to 18 Pa.C.S. § 4954, when that provision of the Pennsylvania Crimes Code related to "Any court with jurisdiction over any criminal matter[.]" Recognizing the obvious differences between juvenile courts and criminal courts, we concluded, "the Legislature expressly limited the power to issue protective orders under § 4954 to courts with jurisdiction over criminal matters [and] because the juvenile court did not have jurisdiction over a criminal matter at the time that it issued the protective order, it lacked statutory authority to issue the order." *Id*. at 1224. I do not share my colleagues' view that this relatively straight-forward principle bears upon the juvenile court's statutory authority over the juvenile petition in the case at bar.

Thus, while it was patent legal error for the court to accept J.C.'s admission to an offense that was impossible for a juvenile to commit, the fact that J.C. admitted to the offense did not divest the juvenile court of subject matter jurisdiction. Regardless of the elements of the offense, corruption of minors is "an act designated a crime under the law of this Commonwealth" and because the offense was not specifically excised from the definition of a

delinquent act, jurisdiction does not rest in the criminal court. 42 Pa.C.S. § 6303 (defining delinquent act). Thus, to the extent that the import of the majority's rationale sounds in subject matter jurisdiction, we cannot simply renounce the juvenile court's jurisdiction over the juvenile delinquency proceeding because the offense that J.C. eventually admitted to committing included an element that is impossible to prove in a juvenile court.

As the juvenile court's subject matter jurisdiction over the delinquency proceedings is irrefutable, I next address whether we can raise the juvenile court error under the rubric of an "illegal sentence" when juvenile court's do not impose sentences or punishments. Juvenile delinquency involves a two-step process: (1) whether the juvenile committed a delinquent act and is need of treatment, supervision or rehabilitation; and (2) the appropriate disposition to serve those needs. *See* 42 Pa.C.S. § 6341(b) (Finding of delinquency); 42 Pa.C.S § 6352(a) (Disposition of delinquent child) ("If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare[.]"). Thus, while it is well ensconced that this Court will address an illegal sentence *sua sponte*, it is less obvious whether this principle applies to juvenile dispositions, which are designed to balance the protection of public's interest with the treatment, supervision, and rehabilitation of the

juvenile. Hence, this dynamic presents an ill-fitting analogy comparing the delinquency adjudication to an illegal sentence.[5]

Nevertheless, in light of our Supreme Court's decision in **McIntyre**, **supra**, I agree with the majority's ultimate conclusion that we may address the underlying issue *sua sponte*, albeit for reasons that do not interweave principles of subject matter jurisdiction. I summarize the High Court's holding in **McIntyre**, as follows. McIntyre was convicted of failing to register as a sex offender under Megan's Law III, which was subsequently deemed unconstitutional in its entirety because the legislature utilized an unconstitutional process to enacted it. McIntyre filed a PCRA petition raising unrelated claims of error, which was denied on the merits. He appealed to this Court, where he asserted for the first time that his conviction and sentence could not stand on an unconstitutional statute. We affirmed the denial of PCRA relief, finding the novel issue waived pursuant to Pa.R.A.P. 302 because McIntyre failed to present the claim to the PCRA court.

Interpreting McIntyre's claim as falling under the classification of an illegal sentence, our Supreme Court reversed our determination, found the statute void *ab initio*, and granted relief. Critically, in deeming the issue non-

---

[5] An apt sentencing analogy would involve the legality of the disposition, *i.e.*, whether the juvenile court exceeded its statutory authority in imposing probation, community service, the submission of DNA samples and fingerprints, and the directive to undergo a sexual offender evaluation. Instantly, none of the components of J.C.'s disposition exceeds the juvenile court's authority.

waivable, the **McIntyre** Court reasoned, "there was no validly-enacted criminal statute on which the Commonwealth could base Appellant's conviction." **McIntyre**, *supra* at 619. Phrased differently, the Supreme Court concluded that the "illegality" arose from the trial court proceeding on an inherently defective statute.

Just as our High Court determined that the trial court in **McIntyre** lacked authority to impose a sentence, the juvenile court lacked the statutory authority to accept J.C.'s admission to committing corruption of minors because it was legally impossible for a juvenile to commit that offense. Thus, in the same manner that the Supreme Court deemed McIntyre's conviction and sentence void *ab initio* in correcting the predicate error despite waiver under Rule 903, I believe that the juvenile court's acceptance of J.C.'s admission to corruption of minors was inherently defective and facially invalid insofar as the offense cannot be committed by a minor. Thus, we may address the juvenile court's error *sua sponte* and grant relief. **See e.g.**, **McIntyre**, **supra** at 616 (issue concerns legality "given that a trial court is not empowered . . . to sentence an individual for a non-existent criminal offense.")

Accordingly, while I disagree with the portion of the majority's rationale that sounds in subject matter jurisdiction, for the reasons explained above, I concur with the decision to address the trial court error *sua sponte*, vacate the dispositional order, and reverse the adjudication of delinquency.