J-S40033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNIE DELARGE | : | |
| | : | |
| Appellant | : | No. 2416 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005559-2021

BEFORE:    STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED FEBRUARY 5, 2025**

Donnie Delarge ("Delarge") appeals from the judgment of sentence imposed following his non-jury trial convictions of rape, robbery,[1] and related offenses.  We affirm.

Delarge committed the underlying offenses in the early morning hours of June 17, 2015, when he was seventeen years old.  The victim, J.L. ("the Victim"), was twenty-two years old.   The trial court summarized the underlying facts as follows:

> [The Victim] intended to ride two buses to her . . . job[, which was to start] at 4:00 a.m.  The first bus took [the Victim] to [a] bus stop near the corner of 65th and Dicks Streets, in [Philadelphia] around 2:45 a.m.  While waiting alone for the next bus, [the Victim] briefly looked across the street and noticed a man "kind of looking" at her[.]

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1)-(2), 3701(a)(1)(ii)-(iii).

While [the Victim] looked at her phone and listened to music, [Delarge] suddenly "grabbed her from behind and told her to empty her pockets." [Delarge] "dragged" [the Victim] backwards into an alley with his one hand around her face and ***his other hand pressing an object against her head***. Once in the alley, [Delarge] told [the Victim] to pull down her pants and attempted to "penetrate" her vagina from behind. [The Victim] felt pressure against her vagina as [Delarge] moved against her in "a back-and-forth motion," but she was unsure whether [Delarge] actually penetrated her. [Delarge] also forced [the Victim] to perform oral sex by inserting his penis into her mouth.

***During the assault, [Delarge told the Victim] he was pressing an airsoft gun against [her] head*** and would shoot her if she screamed. He also punched [the Victim] twice in her right arm and stole her . . . backpack, wallet, money, and headphones. [Delarge] eventually told [the Victim] to face the wall and count backwards from one hundred seconds. Although [the Victim] never saw [Delarge's] face, she was able to observe that her assailant was a black male in dark clothing. [Delarge left the scene.]

Trial Court Opinion, 12/29/23, at 2-3 (record citations and some brackets omitted and emphases added).

The Victim went to the police department and underwent a rape kit examination. "The DNA from [the Victim's] cervical swab was entered into CODIS," or the Combined DNA Index System. ***Id***. at 3. However, law enforcement did not match the sample to Delarge's DNA until February 2020, more than four years after the assault and after Delarge reached the age of majority.[2] ***See*** N.T., 2/14/23, at 54.

_____

[2] At that time, Delarge was imprisoned on an unrelated matter. At trial, he testified he provided DNA sample in 2015 in connection with another case. ***See*** N.T., 2/14/23, at 72. On appeal, Delarge avers "[i]t took the police four

*(Footnote Continued Next Page)*

The Commonwealth charged Delarge as an adult with rape, robbery, and related offenses in criminal court. Delarge did not seek to transfer, or decertify, the charges to juvenile court. This matter proceeded to a non-jury trial on February 14, 2023. The Victim testified consistently with the above summary of the facts, and denied knowing Delarge or having a consensual sexual relationship with him. *See* N.T., 2/14/23, at 35.

> [Delarge] testified in his own defense and denied raping, assaulting, and robbing [the Victim. Instead, a]ccording to [Delarge], he and [the Victim] were engaged in a consensual, secret, sexual affair around the time of the incident. [Delarge] lived near the bus stop and claimed their sexual encounters occurred in that area, either before or after [the Victim's] work shifts. [Delarge] testified that it is 'fair to say' he had sex with [the Victim] around the date of the incident . . . thus explaining why his DNA was swabbed from [her] body. . . .

Trial Court Opinion, 12/29/23, at 4 (record citations omitted). We note Delarge did not present any evidence or argument on whether the airsoft gun was a "deadly weapon" under the Juvenile Act's definition of a "delinquent act."[3]

The trial court found Delarge guilty of all charges: two counts of rape by forcible compulsion; robbery; two counts of involuntary deviate sexual

_____

years to match the DNA collected." Delarge's Brief at 6. However, in light of our holding, discussed *infra*, we conclude this passage of time was not dispositive on the issue of whether Delarge could have been charged with juvenile delinquent acts, rather than adult criminal offenses.

[3] *See* 42 Pa.C.S.A. §§ 6301-6387; *see also* 18 Pa.C.S.A. § 2301 (definition of a "deadly weapon") (discussed *infra*).

intercourse ("IDSI"); unlawful restraint; sexual assault; false imprisonment; theft by unlawful taking; receiving stolen property; possessing an instrument of a crime; terroristic threats; two counts of indecent assault; simple assault, and recklessly endangering another person.[4]

On May 28, 2023, the trial court imposed an aggregate sentence of six to twelve years' imprisonment, to be followed by three years' probation. The trial court found Delarge was not a sexually violent predator under the Pennsylvania Sex Offender Registration and Notification Act[5] ("SORNA"), but found his convictions triggered lifetime registration under Subchapter H.[6]

Delarge filed a timely post-sentence motion, challenging only the discretionary aspects of his sentence. The trial court denied it, and Delarge filed a timely notice of appeal. Both he and the trial court have complied with Pa.R.A.P. 1925.

Delarge raises the following issues for our review:

1. Whether the trial court erred in imposing a lifetime registration requirement under SORNA when . . . Delarge was under 18 at

---

[4] 18 Pa.C.S.A. §§ 3123(a)(1)-(2), 2902(a)(1), 3124.1, 2903(a), 3921(a), 3925(a), 907(a), 2706(a)(1), 3126(a)(1)-(2), 2701(a), 2705.

[5] 42 Pa.C.S.A. §§ 9799.10-9799.75.

[6] **See** 42 Pa.C.S.A. §§ 9799.14(d)(2), (4), (5) (classifying rape, IDSI, and sexual assault as "Tier III" sexual offenses), 9799.15(a)(3) (providing that an individual convicted of a Tier III sexual offense shall register for life); **see also Commonwealth v. Torsilieri**, 316 A.3d 77, 81 (Pa. 2024) ("**Torsilieri II**") (explaining that Subchapter H applies to sexual offenders who committed their offenses on or after December 20, 2012).

the time of the incident.

2. Whether . . . Delarge's lifetime registration requirement under SORNA violates his due process rights under the United States Constitution and the Pennsylvania Constitution because it arises from an irrebuttable presumption and deprives . . . Delarge of the requisite notice and opportunity to be heard.

Delarge's Brief at 5-6.

In his first issue, Delarge challenges the constitutionality of the SORNA registration requirements against him, when he committed the underlying acts as a juvenile. Such a claim goes to the legality of his sentence[7] and "present[s] pure questions of law. Our standard of review, therefore, is de novo and our scope of review is plenary." **Commonwealth v. Asbury**, 299 A.3d 996, 998 (Pa. Super. 2023).

As noted above, Subchapter H of SORNA classifies convictions of rape, IDSI, and sexual assault as "Tier III" sexual offenses, which carry a lifetime registration requirement. **See** 42 Pa.C.S.A. §§ 9799.14(d)(2), (4), (5), 9799.15(a)(3). Pertinent to our discussion **infra**, SORNA sets forth a legislative irrebuttable presumption that all "[s]exual offenders pose a high risk of committing additional sexual offenses." 42 Pa.C.S.A. § 9799.11(a)(4).

---

[7] Delarge challenged his SORNA registration requirements for the first time in his Rule 1925(b) statement of errors complained of on appeal. However, we determine he has not waived them. **See Commonwealth v. McGhee**, 230 A.3d 1277, 1289 (Pa. Super. 2020) (noting that challenge to SORNA registration "cannot be waived, so long as a court has jurisdiction to address it"). **But see** Pa.R.A.P. 1925(b)(4)(vii) (generally providing that issues not included in the statement are waived).

For ease of discussion, we next review the definition of a "delinquent act" under the Juvenile Act:

> (1) The term means an act designated a crime under the law of this Commonwealth . . . .
>
> (2) The term shall not include:
>
> * * * *
>
> > (ii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct ***and a deadly weapon as defined in 18 Pa.C.S. § 2301 . . . was used*** during the commission of the offense which, if committed by an adult, would be classified as:
> >
> > > (A) Rape as defined in 18 Pa.C.S. § 3121 . . . .
> > >
> > > (B) [IDSI] as defined in 18 Pa.C.S. § 3123 . . . .
> > >
> > > * * * *
> > >
> > > (D) Robbery as defined in 18 Pa.C.S. § 3701(a)(1) . . . (ii) or (iii) . . . .

42 Pa.C.S.A. § 6302 ("Definitions") (emphasis added).

Section 2301 of the Crimes Code,[8] in turn, defines a "deadly weapon" as:

> any firearm, whether loaded or unloaded, or
>
> any device designed as a weapon and capable of producing death or serious bodily injury,
>
> or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

---

[8] 18 Pa.C.S.A. §§ 101-9546.

18 Pa.C.S.A. § 2301 (paragraph breaks added).

"[W]hen the crime involved is one excluded from the Juvenile Act's definition of a delinquent crime, the charge is automatically within the jurisdiction of the criminal court and jurisdiction is presumptively proper." *Commonwealth v. Ramos*, 920 A.2d 1253, 1258 (Pa. Super. 2007) (citation omitted). "It is well established that a juvenile seeking decertification has the burden of proving by the preponderance of the evidence that the transfer to juvenile court is warranted." *Id*. (*citing*, *inter alia*, 42 Pa.C.S.A. § 6322). To this end, where applicable, when seeking to show his act was a "delinquent act," the juvenile bears the burden of proving a gun used during the offense was not a "deadly weapon." *Id*. at 1259.

We next review decisional law addressing the application of SORNA to juveniles. First, in *Interest of J.B.*, 107 A.3d 1 (Pa. 2014), seven juveniles were adjudicated delinquent of sexual offenses that did not involve a weapon. *See id*. at 2. They challenged the constitutionality of the imposition of lifetime SORNA registration against them. *Id*. at 2-3. The Pennsylvania Supreme Court noted that by its terms, SORNA's classification of "tiered" offenses applied to a "juvenile offender." *Id*. at 17 (*citing* 42 Pa.C.S.A. § 9799.13(8)). SORNA defined a "juvenile offender," in turn, as an individual who was "fourteen or older when they commit[ed] 'an offense which, if committed by an adult, would be classified as," *inter alia*, rape under 18 Pa.C.S.A § 3121 or IDSI under 18 Pa.C.S.A § 3123; and (2) was *adjudicated delinquent* of the

offense. 42 Pa.C.S.A. § 9799.12 ("Definitions"). The Supreme Court concluded that the application of SORNA's "lifetime registration requirements upon **adjudication** of specified offenses violates juvenile offenders' due process rights by utilizing [the] irrebuttable presumption" that all sexual offenders pose a high risk of recidivism.[9] *Id*. at 19-20 (emphasis added).

Pertinently, however, the **J.B.** Court also noted that some "juveniles are automatically subject to criminal prosecution, rather than delinquency adjudication, if they were at least fifteen years old when they allegedly committed the . . . crimes of rape[ or IDSI] **and the crime was committed with a deadly weapon**." **Interest of J.B.**, 107 A.3d at 8 n.14 (emphasis added). The **J.B.** Court stated that such juveniles are "exempt from the term 'juvenile offender'" and "will instead be subject to SORNA as individuals convicted of sexual violent offenses." *Id*.

In **Commonwealth v. Haines**, 222 A.3d 756 (Pa. Super. 2019), this Court extended **J.B.**'s holding to a defendant ("Haines"), who could have been adjudicated delinquent, but was convicted as an adult due to the passage of

---

[9] Specifically, the **J.B.** Court concluded that application of the presumption — that a sexual offender posed a high risk of reoffending — on a juvenile violated that juvenile's due process rights and right to reputation. **Interest of J.B.**, 107 A.3d at 20-21. In support, the Supreme Court credited studies that "suggest[ed] that many of those who commit sexual offenses as juveniles do so as a result of impulsivity and sexual curiosity, which diminish with rehabilitation and general maturation," and that "[w]hile adult sexual offenders have a high likelihood of reoffense, juvenile sexual offenders exhibit low levels of recidivism." *Id*. at 17.

time. *See id*. at 759; *see also* 42 Pa.C.S.A. § 6302 (defining a "child" as, *inter alia*, an individual "under the age of [twenty-one] years who committed an act of delinquency before reaching the age of [eighteen] years"); *Commonwealth v. Monaco*, 869 A.2d 1026, 1029 (Pa. Super. 2005) (applying section 6302 definition of a "child" and stating that a person over the age of twenty-one, regardless of when he committed the underlying offense, does not fall under the ambit of the Juvenile Act and thus does not proceed in juvenile court).

In *Haines*, Haines committed indecent assault of a person less than thirteen years of age when she was fourteen and fifteen years old, but the victim did not disclose the allegations until ten years later, after Haines reached adulthood. *See* 222 A.3d at 756. This Court applied the *J.B.* decision:

> Clearly, under *J.B.*, had [Haines] been adjudicated delinquent at [the time of her offenses], no registration requirement would apply to her. [Haines'] subsequent conviction of the sexual offenses when she was an adult does not diminish the fact that she was a juvenile at the time of their commission, and because of that, she should not be held to an irrebuttable presumption of reoffending at age 26[, when the Commonwealth filed the charge against her]. *J.B.* requires us to analyze [Haines'] behavior at the time the offenses were committed.

*Haines*, 222 A.3d at 759.[10]  The Court thus concluded that *J.B.* "should apply with equal weight to juvenile adjudications as well as to defendants convicted as adults for crimes committed as juveniles." *Id*.

In *Asbury*, 299 A.3d 996, this Court declined to extend *Haines* to a case involving "a juvenile, who [was] charged and convicted of an offense that is statutorily excluded from the definition of 'delinquent act.'" *Id*. at 998, 1001.  In that case, the defendant ("Asbury") pleaded guilty to a rape committed when he was sixteen years old.[11]  *See Asbury*, 299 A.3d at 997-98.  Because he used a firearm, his offense "could not be considered a delinquent act under the Juvenile Act," and instead "the charge was filed directly in criminal court."  *Id*. at 997-98 (*citing* 42 Pa.C.S.A. § 6302) (footnote omitted).

On appeal, Asbury challenged his lifetime SORNA reporting requirement, relying on *Haines*.  *See Asbury*, 299 A.3d at 999.  This Court considered the discussion in *J.B.*, that juveniles who "were at least fifteen years old when

---

[10] The *Haines* Court also considered *Miller v. Alabama*, 567 U.S. 460 (2012), in which the United States Supreme Court: (1) credited "the inherent understanding of the fundamental differences between adults and children, children's lack of maturity, and their underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk-taking;" and (2) "held that mandatory sentences of life imprisonment without the possibility of parole for homicide defendants under [eighteen] years of age at the time the crime was committed was unconstitutional." *Haines*, 222 A.3d at 758.
[11] The defendant also pleaded guilty to a second count of rape, which "was originally filed in juvenile court and later certified to criminal court." *Asbury*, 299 A.3d at 997.  That count is not relevant to our discussion.

they allegedly committed" rape or IDSI with a deadly weapon: (1) fall outside the definition of a "juvenile offender" under SORNA; and thus (2) will "be subject to SORNA as individuals convicted of sexual violent offenses." *Id*. at 1000-01 (*citing J.B.*, at 107 A.3d at 8 n.14). The *Asbury* Court concluded that because "Asbury committed a criminal act, not a delinquent act, . . . the statutory provisions exempted him from the term 'juvenile offender,' and instead subjected him to SORNA as [an] individual[] convicted of sexual violent offenses." *Asbury*, 299 A.3d at 1001 (*citing J.B.*, 107 A.3d at 8 n.14). In so holding, the Court distinguished *Haines*, whose holding was "premised on a juvenile offender who committed *delinquent acts* at the time of offending, *not criminal acts*, as Asbury committed here." *Id*. at 1000 (emphasis in original). The *Asbury* Court then determined that because Asbury incurred a *conviction*, rather than the adjudication of a *delinquent act*, he was subject to SORNA's lifetime registration requirements. *See id*. at 1001.

Finally, we consider the relevant evidentiary burden of proof. We reiterate that "a juvenile seeking decertification has the burden of proving by the preponderance of the evidence that the transfer to juvenile court is warranted." *Ramos*, 920 A.2d at 1258. In *Ramos*, the Commonwealth charged the defendant ("Ramos") as an adult for conspiracy and robberies committed with a BB gun when he was seventeen years old. *See id*. at 1255. Ramos filed a petition to transfer the case to juvenile court. *See id*. The trial

court conducted a hearing, at which the Commonwealth presented a ballistics expert's testimony about BB guns. *See id*. at 1256-57. Ramos' attorney acknowledged that Ramos used a BB gun but did not present any evidence about BB guns. *See id*. at 1256. The trial court found Ramos used a deadly weapon and thus denied the petition to transfer. *See id*. at 1255, 1257.

On appeal, Ramos argued the trial court erred in finding a BB gun was a deadly weapon under 18 Pa.C.S.A. § 2301. *See Ramos*, 920 A.2d at 1257. This Court denied relief, first determining that Ramos "bore the burden of proving that the gun was not a deadly weapon." *Id*. at 1259. This Court then found he failed to meet his evidentiary burden:

> Clearly, [Ramos] did not present any evidence regarding the weapon that was used during the robberies to sustain his burden of proving that his offenses should be adjudicated in the juvenile system. Rather, the Commonwealth assumed the burden, presenting testimony from the victims that [Ramos] possessed a gun. [Ramos] was the only one who could know with certainty what kind of weapon he used and its whereabouts. If he actually used an item during the robbery that could not be construed as a deadly weapon, the onus was upon him to present it, or evidence relative thereto, to the court to support his petition. A voluntary decision to keep information from the trial court will effectively deny a juvenile of the protections of the Juvenile Act.

*Id*. at 1259 (citations omitted).[12]

_____

[12] The **Ramos** Court also reasoned, in the alternative, that even if the Commonwealth bore the burden of proof, the trial court did not err in finding a BB gun was a deadly weapon under 18 Pa.C.S.A. § 2301. **Ramos**, 920 A.2d at 1259-60.

In the instant appeal, the trial court and the parties are in agreement as to the holdings of **J.B.**, **Haines**, and **Asbury**. **See** Trial Court Opinion, 12/29/23, at 5-7; **see also** Delarge's Brief at 8-11; Commonwealth's Brief at 6. The issue is which case governs the facts presented in this matter. For ease of discussion, we now review the trial court's reasoning.[13]

Saliently, the trial court found Delarge's acts of pressing an airsoft gun against the Victim's head, "while raping and assaulting her," and threatening to shoot her if she screamed, sufficiently established that Delarge used a deadly weapon during his commission of the rape and robbery. Trial Court Opinion, 12/29/23, at 8 (*citing* 18 Pa.C.S.A. § 2301 (defining a "deadly weapon"); **Ramos**, 920 A.2d at 1260).[14] Thus, the trial court reasons that Delarge did not commit **delinquent acts**, similar to the defendant in **Haines**, but rather Delarge committed **crimes**, consistent with **Asbury**. Accordingly, the trial court suggests that lifetime SORNA registration is appropriate pursuant to **Asbury**.

---

[13] As stated above, the trial court did not address this issue until Delarge raised it for the first time in his Rule 1925(b) statement.

[14] The trial court also cited **Commonwealth v. Brougher**, 978 A.2d 373 (Pa. Super. 2009), for the proposition that "holding an airsoft gun pointed at the victim's face was a deadly weapon because 'it was capable of causing serious bodily injury or death.'" Trial Court Opinion, 12/29/23, at 8. However, we agree with Delarge that **Brougher** is distinguishable, as that decision reviewed the phrase "possess[ing] a deadly weapon" under the Sentencing Guidelines' deadly weapon sentencing enhancement, which involves a different statutory definition from the Juvenile Act's definition at issue here. **See Brougher**, 978 A.2d at 377 (*citing* 204 Pa. Code § 303.10(a)(1)(i)-(ii)).

Delarge argues that, contrary to the trial court's finding: (1) an airsoft gun is not a deadly weapon; and indeed (2) an airsoft gun, which "uses plastic pellets," is significantly different from a BB gun, which "uses steel pellets." Delarge's Brief at 11-12. Delarge avers that in *Ramos*, the Superior Court "pointed to extensive testimony . . . by a ballistics expert that a BB gun could cause death of serious bodily injury," whereas "here, there was no evidentiary hearing involving a ballistics expert." *Id*. Delarge avers: (1) this case is distinguishable from *Asbury*, in which the defendant committed rape with a firearm and thus was "direct filed into criminal court;" and instead (2) this case is similar to *Haines*, as he was seventeen at the time of the offenses, but was "tried as an adult [merely] because law enforcement did not charge him until five years" later. *Id*. at 10.

After review of the record and the relevant law, we conclude that the imposition of lifetime SORNA registration on Delarge is proper. First, although Delarge insists there was no ballistics expert or evidentiary hearing in this matter, he overlooks that he bore the evidentiary burden. *See Ramos*, 920 A.2d at 1258-59; *see also* Delarge's Brief at 11. As Delarge did not present any evidence before the trial court as to whether the airsoft gun was a deadly weapon under Section 2301, we determine he failed to establish that his conduct met the Juvenile Act's definition of a delinquent act. *See* 18 Pa.C.S.A. § 2301 (definition of a "deadly weapon"); *see also* 42 Pa.C.S.A. § 6302 (definition of a "delinquent act"); *Ramos*, 920 A.2d at 1258-59. Accordingly,

we conclude Delarge's conviction places this case squarely under the ambit of ***Asbury***, and the imposition of lifetime SORNA registration was appropriate. ***See Asbury***, 299 A.3d at 1000-01. For the foregoing reasons, no relief is due on Delarge's first claim.[15]

In his second issue, Delarge relies on the then-pending decision in ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020) ("***Torsilieri I***"), in which the Pennsylvania Supreme Court had remanded the case for evidentiary hearings on the constitutionality of the SORNA presumption — that all sexual offenders pose a higher risk of recidivism. Delarge argues he "did not have an evidentiary hearing to present scientific evidence," and thus requests remand for such a hearing. Delarge's Brief at 16.

The trial court's opinion, also issued while ***Torsilieri I*** was pending, pointed out that Delarge did not present any "scientific evidence undermining the General Assembly's factual findings in support of SORNA's registration requirements, [and thus] failed to satisfy his burden of proving the statutory enactments violate the [C]onstitution." Trial Court Opinion, 12/29/23, at 11.

---

[15] Moreover, on the merits, Delarge does not discuss the elements of the statutory definition of a "deadly weapon," but rather merely argues that an airsoft gun, which "uses plastic pellets," "is significantly different [from] a BB gun," which "uses steel pellets." Delarge's Brief at 12. Even if this were true, such a distinction would not necessarily remove an airsoft gun from the expansive definition of a "deadly weapon." ***See*** 18 Pa.C.S. § 2301 (defining a "deadly weapon" to include "***any*** . . . device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury") (emphasis added).

Furthermore, the trial court reasoned that unless and until the Pennsylvania Supreme Court declares the SORNA registration requirements to be unconstitutional, Delarge cannot show he is entitled to relief. *See id*. at 10.

In May 2024, following the filing of the parties' briefs, our Supreme Court issued a subsequent decision, **Torsilieri II**, upholding Subchapter H of SORNA as constitutional. Pertinently, the Court concluded that the legislative presumption, "that individuals who commit sexual offenses pose a high risk of committing additional sexual offenses," did not violate due process. **Torsilieri II**, 316 A.3d at 79.

"Given that our Supreme Court has upheld the General Assembly's presumption that adult sexual offenders pose a high risk of committing additional sexual offenses, [Delarge] has not shown he is entitled to any relief." **Commonwealth v. Krzan**, 325 A.3d 714, 725 (Pa. Super. 2024). Accordingly, no relief is due on Delarge's second claim.

For the foregoing reasons, we uphold the imposition of lifetime SORNA registration on Delarge, and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  2/05/2025

- 16 -